UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WAHEED M.,

        Plaintiff,

        v.                                              **DECISION AND ORDER**

                                                                       23-CV-117S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Waheed M.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his application with the Social Security Administration on June 12, 2020. Plaintiff alleged disability began on November 26, 2019, due to degenerative disc disease. Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On July 22, 2021, ALJ Peter Lee held a telephonic hearing due to the COVID-19 pandemic at which Plaintiff was represented by counsel and Vocational Expert James Soldner appeared and testified. (R.[2] at 35-57, 20.) At the time of the hearing

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

Plaintiff was a 56-year-old man with a high school education (R. at 29).  Plaintiff worked as a hospital courier from June 1982 to November 2019 (R. at 29).

4. The ALJ considered the case *de novo* and, on December 6, 2021, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 10.)  Plaintiff filed his Reply on September 12, 2023 (Docket No. 11), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied, and Defendant's Motion will be granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's December 6, 2021, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § 404.1520. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age,

3

>education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.	Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

11.	The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of November 26, 2019.  (R. at 22.)  At Step Two, the ALJ found that Plaintiff has the following severe impairment:  degenerative disc disease.  (R. at 22.)  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23.)

4

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work except that Plaintiff can occasionally climb ladders, ropes, or scaffolds; occasionally be exposed to unprotected heights or hazardous machinery; frequently climb ramps or stairs; and frequently crawl, stoop, crouch, and balance. (R. at 23.)

13. At Step Four, the ALJ found that Plaintiff can perform his past relevant work as a hospital courier, which the ALJ classified as an outside deliverer under the Dictionary of Occupational Titles ("DOT"), a light exertion job performed here as heavy exertion level work. (R. at 28-29; see R. at 89 (Disability Determination Explanation).) At Step Five, the ALJ alternatively found that there are also jobs, such as a laborer, laundry worker, or dining room attendant that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 29-30.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 29-30.)

14. Plaintiff contends that the ALJ failed to properly evaluate opinion evidence from a disability analyst regarding his ability to stoop. Further, Plaintiff argues that the ALJ did not consider the possibility that his past relevant work was a composite job. For the reasons that follow, this Court holds that the ALJ appropriately weighed the relevant opinions. Given this disposition, the Step Four identification of Plaintiff's past relevant work need not be revisited.

15. First, considering Plaintiff's ability to stoop, Social Security Administration regulations define stooping as a type of bending by the body moving downward and forward by bending the spine at the waist. SSR 83-14, 1983 WL 31254, at *2 (1983).

16.	For a post-March 27, 2017, application as presented here, medical opinions are evaluated for their persuasiveness, with the most important persuasiveness factors are the opinion's supportability by objective medical evidence and its consistency with evidence from other medical and nonmedical sources. Id. § 404.1520c(a), (b)(2), (c)(1), (2).

17.	Plaintiff testified at the ALJ hearing that he had pain from an automobile accident while bending and stooping, with his pain aggravated if he sat for a long time (R. at 24, 43, 45-46). Plaintiff reported that, as a hospital courier, he spent one hour each day stooping, one hour handling large objects, two hours walking, one hour standing, and three hours sitting (R. at 221).

18.	State agency consultant Dr. Gary Ehlert reviewed Plaintiff's medical record on January 7, 2021, and found that Plaintiff could occasionally stoop, stand, or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, could lift and/or carry 50 pounds occasionally and 25 pounds frequently (R. at 86, 87). Dr. Ehlert noted from a September 2, 2020, examination that Plaintiff was not in acute distress (R. at 88). The doctor also observed that Plaintiff's September 17, 2020, MRI revealed moderate to severe facet arthropathy at L5-S1, slight grade 1 spondylolisthesis of L5 on S1 and disc bulging. (R. at 88, 316.)

19.	Dr. Ehlert completed an Electronic Request for Medical Advice to disability analyst G. Grabow on January 7, 2021, stating that he reviewed Plaintiff's MRI and x-ray examinations, and Plaintiff's reports of lower back pain. Dr. Ehlert noted that Plaintiff's January 30, 2020, x-ray revealed moderate intervertebral disc space narrowing at C3 to C4 and C5 to C7. (R. 314, 316.)

20. Dr. Ehlert also saw Plaintiff's examination note from October 26, 2020, where Plaintiff complained of continued experiencing cervical and lumbar pain, with unmedicated pain reaching levels of 8 to 9 (on a 10-point scale) but reduced to 4-5 level with over-the-counter medication. (R. at 316.) Plaintiff had a difficulty rising from a chair to a standing position and had reduced walking distances and poor sitting tolerance. (R. at 316.)

21. Dr. Ehlert thus concluded that Plaintiff was limited to occasional stooping changing any potential RFC from medium to light exertion work. (R. at 316.)

22. Dr. Ehlert distinguished the more restrictive opinion of consultative examiner Dr. John Schwab because it underestimated the severity of Plaintiff's restrictions or limitations (R. at 88-89). Dr. Ehlert then concluded that Plaintiff was not disabled (R. at 90).

23. The ALJ, however, found that Dr. Ehlert's stooping limitation was not supported by the record which the ALJ found "suggests mild findings" (R. at 27-28). The ALJ considered Dr. Ehlert and disability analyst Grabow's Disability Determination Explanation (R. at 78) and found that it was partially persuasive, concluding therefrom that Plaintiff could perform medium exertion work, limited to occasional stooping. The ALJ said that he provided for this limitation by concluding in the RFC that Plaintiff could frequently stoop. (R. at 28.)

24. Plaintiff now claims that the ALJ erred in not considering analyst Grabow's post-hearing evaluation (R. at 316; see Docket No. 9, Pl. Memo. at 11-12; Docket No. 11, Pl. Reply Memo. at 1-2) because it affected the consistency test for other medical opinions considered by the ALJ. This is of no moment.

25. First, this Court finds that the document at issue was not written by Grabow. As he noted, the document Plaintiff cited as authored by Grabow is from Dr. Ehlert seeking evaluation by analyst Grabow (R. at 314, 316).  There, Dr. Ehlert summarized Plaintiff's medical record for Grabow's review with Dr. Ehlert's conclusions that Plaintiff was limited to occasional stooping and thus could perform light exertion work (R. at 316).

26. Grabow did review the record upon reconsideration for the sufficiency of the evidence of record and its consistency to support the proposed determination (R. at 91). Grabow thoroughly reviewed the reconsideration file, including Dr. Ehlert's finding that Plaintiff could stoop occasionally (R. at 87), and concluded that the record was sufficient and consistent to support the proposed determination that Plaintiff was not disabled (R. at 90, 91).

27. Second, the ALJ did consider analyst Grabow's reconsideration opinion within the Disability Determination Explanation submitted by Dr. Ehlert (R. at 27-28; see R. at 78-91).  Grabow signed this Disability Determination Explanation and made his sole opinion on the sufficiency and consistency of the reconsideration file (R. at 91).

28. This Court further finds that the ALJ's persuasiveness determination of Dr. Ehlert's opinion on Plaintiff's stooping limitation is supported by the medical opinion evidence from the consultative examiners Drs. Hongbaio Liu and John Schwab.

29. Dr. Liu examined Plaintiff and found that Plaintiff had mild limitations for prolonged bending, among other activities (R. at 337).  Dr. Liu observed that Plaintiff had a normal gait and stance and did not require assistive devices (R. at 335).  The doctor noted that Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally, while the lumbar spine had flexion/extension 80

degrees, lateral flexion left and right at 20 degrees, and rotary movement left and right 20 degrees.  Dr. Liu found that Plaintiff had full range of motion of his shoulders, elbows, forearms, and wrists as well as his knees, hips, and ankles. (R. at 336.) Dr. Liu diagnosed Plaintiff with chronic neck and low back pain from the automobile accident (R. at 337).

30. The ALJ, while accepting the underlying clinical findings, declined to adopt Dr. Liu's conclusion since its mild limitation conclusion was "ill defined" (R. at 28).

31. Dr. Schwab also examined Plaintiff, diagnosing him with having neck pain and back pain but concluded that these results were unremarkable and that he did not have any restrictions (R. at 334).  The ALJ found this opinion was unpersuasive, however, concluding that "the doctor's finding that the claimant has no restrictions is not supported by the record  . . . , which shows positive clinical findings of pain as well as objective findings on MRI testing" (R. at 28).

32. Although the ALJ found unpersuasive the conclusions of these opinions, the ALJ accepted the doctors' objective findings establishing the degree Plaintiff's limitation in stooping.

33. Comparing the consultants' findings with those of Dr. Ehlert, Drs. Liu and Schwab made the same findings as to Plaintiff's pain, stance, gait, and ranges of motion as observed by Dr. Ehlert (R. at 84, 87, 88, 316).

34. This Court finds that the ALJ appropriately determined the persuasiveness of these opinions from the state agency and consultative examiners, balancing findings of normal upper and lower extremity strength and gait with Plaintiff's persistent complaints of back pain and reduced ranges of motion in his cervical and lumbar spine (R. at 28).

The examination findings of these doctors consistently noted Plaintiff's strengths and his pain and restricted range of motion.

35.    This Court concludes that the ALJ had substantial evidence for finding that Plaintiff could frequently stoop.  Although Dr. Ehlert found that Plaintiff was more restricted in stooping, clinical findings by Drs. Liu and Schwab (as well as Dr. Ehlert's findings, R. at 87-88) support the conclusion that Plaintiff could stoop more frequently than Plaintiff now contends.

36.    Plaintiff's Motion for Judgment on the Pleadings on these issues is denied while Defendant's Motion for Judgment on the Pleadings is granted.

37.    Plaintiff next argues that the ALJ erred in merely considering his past relevant work was as an outside deliverer under the DOT, 1991 WL 672160, and failed to deem his past relevant work was a composite of two jobs under the DOT.  Instead, Plaintiff claims other DOT job titles (sales routes driver and mail carrier) together better described his duties as a hospital courier than that of an outside deliverer.  DOT, 1991 WL 672567, DOT Code 292.353-010 (delivery route truck driver or driver, sales route) (1991); DOT, 1991 WL 672158, DOT Code 230.367-010 (mail carrier) (1991).

38.    This Court notes that when "significant variation exists between a claimant's description of her job and the DOT description of the job, it may be the result of a composite job." Long v. Berryhill, No. 16-CV-760S, 2018 WL 618119, at *4 (W.D.N.Y. Jan. 30, 2018) (Skrenty, J.) (internal quotation marks omitted).  A composite job has significant elements of two or more DOT-defined occupations and, as such, has no counterpart in the DOT.  SSR 82-61, 1982 WL 31387, at *2.  A blend of two different DOT jobs "is indicative of past relevant work as a composite job." Walterich v. Comm'r, No. 18-

CV-1329, 2020 WL 2078795, at *4 (W.D.N.Y. Apr. 30, 2020); Cheryl A. v. Comm'r, No. 20-CV-01649, 2022 WL 1665159, at *3 (W.D.N.Y. May 25, 2022).  Where the ALJ and Vocational Expert ignored the possibility that claimant's job is a composite of two or more jobs, this Court lacks sufficient information to conclude whether the ALJ properly considered claimant's past relevant work.  Cheryl A., supra, 2022 WL 1665159, at *4.

39. With the finding on Plaintiff's ability to stoop, this Court need not consider whether the ALJ was correct in the past relevant work finding.  But considering the potential jobs that Plaintiff either performed or could potentially perform and his ability to stoop, any error in the classification of Plaintiff's past relevant work was harmless.

40. Plaintiff's job as a hospital courier is not a defined occupation in the DOT. The ALJ adopted the Vocational Expert's opinion and found that a hospital courier was an outside deliverer under the DOT, generally an occupation that does not require stooping (R. at 28-29, 51).  DOT, 1991 WL 672160, DOT Code 230-663-010, Deliverer, Outside (1991).

41. Examining Plaintiff's identified potential composite jobs and the stooping they require, a mail carrier can work without stooping,1991 WL 672160;1991 WL 672158, while a delivery route truck driver requires occasional stooping, 1991 WL 672567.

42. Since this Court upholds the ALJ's finding that Plaintiff could frequently stoop, Plaintiff could perform any of the DOT job titles that could be a hospital courier (either outside deliverer or the combination of mail carrier and deliver route truck driver). Thus, whether hospital courier is a DOT composite job is not material.

43. Furthermore, at Step Five, the ALJ also found at least three alternative jobs that Plaintiff could perform with his stooping limitations.  This Court also reviewed the

11

DOT definitions for these alternative jobs and the required stooping for each. A laborer must stoop frequently, DOT, 1991 WL 688132, DOT Code 922.687-058, Laborer (1991), while a laundry worker or dining room attendant each must only stoop occasionally, DOT, 1991 WL 672987, DOT Code 361.685-018, Laundry Worker (1991); DOT, 1991 WL 672696, DOT Code 311.677-018, Dining Room Attendant (1991).

44.  Again, accepting the ALJ's stoop limitation finding, this Court concludes that Plaintiff could perform these alternative jobs. Therefore, Plaintiff's Motion for Judgment on the Pleadings as to potential composite jobs is denied.

45.  Accordingly, having reviewed the ALJ's decision and having considered Plaintiff's arguments, this Court finds no error in the ALJ's determination. The ALJ had substantial evidence for concluding that Plaintiff could frequently stoop. The ALJ's finding of Plaintiff's past relevant work is harmless since Plaintiff could perform any of the jobs that the Dictionary of Occupational Titles defines hospital courier. Thus, Plaintiff's Motion for Judgment on the Pleadings is denied, Defendant's motion is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	March 25, 2024
	Buffalo, New York

_s/William M. Skretny_
WILLIAM M. SKRETNY
United States District Judge
